**Mary Annette COLL, Plaintiff,**

**v.**

**Francisco COLL, Defendant.**

**Civ. A. No. 88–0886.**

United States District Court,
District of Columbia.

Aug. 8, 1988.

Jane Moretz Edmisten, Washington, D.C., for plaintiff.

Wallace A. Christensen, Ross, Dixon & Masbeck, Washington, D.C., for defendant.

### ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Mary Annette Coll brings this action against her former husband for partition of property located in the District of Columbia, an accounting of the rents and profits that defendant Francisco Coll has been receiving on the property, and enforcement of an alimony award. In response, defendant filed a motion to quash service of process. Before reviewing that motion, the Court expressed its concern that the causes of action in this case were domestic-related and therefore that jurisdiction might be lacking or, in any event, inappropriate. This matter now comes before the Court on the parties' responses to the Court's Order to show cause why this case should not be dismissed and refiled in the Superior Court of the District of Columbia. For the reasons set forth below, the Court finds that this case falls within the "domestic-relations exception" to federal diversity jurisdiction and therefore shall not be entertained.

The domestic-relations exception to federal diversity jurisdiction is a well-established judge-made doctrine, though it has no direct constitutional or statutory basis.[1] The seminal case articulating this exception is one of the very cases plaintiff relies on in her response to the Court's Order to show cause: *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). Plaintiff's Response to Court's Order to Show Cause at 6–7 ("Pl. Resp."). In *Barber*, the Supreme Court held that it was a proper exercise of diversity jurisdiction for a federal court in Wisconsin to enforce a decree of a New York State Court for divorce and alimony, but added: "We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery *or as an incident to divorce a vinculo* or to one from bed and board." *Id.* 62 U.S. at 584 (emphasis added).[2] This dictum formed the foundation for the general rule courts have followed since, "which bars the federal courts not only from entertaining actions involving questions of matrimonial status but also from hearing 'domestic relations' cases where only property rights are involved." C. Wright, *Law of Federal Courts* 144 (4th ed. 1983) (footnotes omitted); *see also Wilkins v. Rogers*, 581 F.2d 399, 403 (4th Cir.1978).

Federal courts have "inconsistently and unpredictably" characterized actions that they believe to be domestic-related and therefore within the scope of the exemp-

---

1. J.H. Green, J. Long & R. Murawski, *Dissolution of Marriage* 172 (1986) (hereinafter cited as Green).

2. The Supreme Court further expounded on this exception two years later in *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), where it held that the district court did not have jurisdiction to issue writs of habeas corpus to take custody of a child from its grandparents and return the child to his natural father. The Court commented that "[t]he whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not of the United States." *Id.* at 853, cited by the Court with approval as recently as 1979, *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1.

tion.[3] Contemporary courts acknowledge that the "boundaries of the exception are uncertain," *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir.1982), and "the results and reasoning of the cases in this area cannot be fully harmonized." *Ruffalo v. Civiletti*, 539 F.Supp. 949, 955 (W.D. Mo.1982), *aff'd*, 702 F.2d 710 (8th Cir.1983).[4]

This Court's invocation of the exception in this case is nonetheless firmly based on the principles underlying the abstention doctrine. One of the exceptional circumstances where a federal court can decline to exercise its jurisdiction, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976),[5] is in actions incidental to the "core issues" of domestic relations.[6] In *Bossom v. Bossom*, 551 F.2d 474 (2d Cir.1976), an ex-husband plaintiff challenged a provision in the divorce decree that stated if he defaulted on child support he would be denied visitation rights and would have to deliver out of escrow a deed to his wife for his half-interest in their marital home. The court held that "[i]n a case not coming within the exception relating to matrimonial actions, a federal court may still decline jurisdiction if the action is 'on the verge' of the exception, when there is no obstacle to a full and fair determination in the state courts and the interests of justice would be served by allowing the determination to be made by them in view of their great familiarity with matrimonial disputes and the absence of any such expertise by the federal courts." *Id.* at 475.

The Court finds this same reasoning applicable here where the issues relate to the parties' finances and property purchased by them through the business they jointly founded and managed during their 23-year marriage. Plaintiff contends that the alimony, a fixed lump-sum amount and the partition of a tenancy-in-common (formerly tenancy by the entireties), are entirely new causes of action unrelated to the matters resolved in the couple's divorce decree. As discussed below, however, the relevant case law and the face of plaintiff's "Complaint for the Division of Real Property, Enforcement of a Foreign Judgment and Accounting for Rents and Profits" ("Complaint"), clearly indicate that the issues presented in this case still revolve around and are entangled with domestic matters relating back to the parties' lengthy marriage and their decree of divorce.

Recently, the Court of Appeals for the First Circuit "suggested in dicta that liquidated obligations such as accrued alimony or property settlements *may* be entered in federal court even if they originated in an action involving domestic relations." *Beliveau v. Beliveau*, 655 F.Supp. 478, 479 (D.Me.1987) (citing *Gonzales Canevero v. Rexach*, 793 F.2d 417, 418 (1st Cir.1986) (emphasis added)).[7] However, the First

---

3. Green at 173; *see* Note, *The Domestic Relations Exception to Diversity Jurisdiction*, 83 Colum. L.Rev. 1824 (1983) (hereinafter cited as Note, *Domestic Relations* ).

4. *See also Application of the Federal Abstention Doctrines to the Domestic Relations Exceptions to Federal Diversity*, Duke L.J. 1095, 1100 (1983).

5. *See also* Note, *Domestic Relations*, at 1832.

6. *Id.*

7. In *Gonzalez Canevero v. Rexach*, a case factually similar to this case, a wife sued her ex-husband for damages equal to her half-interest in a corporation she claimed was controlled by him and sought partition of the property. 793 F.2d 417 (1st Cir.1986). As in this case, the parties were divorced in Florida and none of their property was distributed by the Florida divorce decree. (Although some of the Coll's property was distributed in their Florida divorce, the District of Columbia property in question was mentioned but not distributed. *See* Divorce Decree (attached to Complaint)). Even after examining a line of cases cited by the plaintiff that supported the proposition that "an action between former spouses that does not require 'the adjustment of family status or establishing familial duties or determining the existence of a breach of such duties does not contravene the domestic relations exception to federal diversity jurisdiction,'" *id.* at 418 (quoting *Raftery v. Scott*, 756 F.2d 335, 338 (4th Cir.1985)), the court held that "federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception." *Id.* (quoting *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir.1981)).

Circuit has clearly established, and this Court concurs, that if causes of action are closely related to or entwined with issues arising from divorce or alimony, then the "federal court—even when it has jurisdiction—may abstain for reasons of comity and common sense from cases better handled by the state courts having authority over matrimonial and family matters." *Beliveau*, 655 F.Supp. at 479 (quoting *Armstrong v. Armstrong*, 508 F.2d 348, 350 (1st Cir.1974)); *Gonzalez Canevero*, 793 F.2d at 418; *see also Csibi v. Fustos*, 670 F.2d 134, 137 (9th Cir.1982); *Rotolo v. Rotolo*, 682 F.Supp. 8, 10 (D.P.R.1988).

Here, the issues involve enforcement of an alimony payment, an accounting of the rents and profits of property located in the District of Columbia, and as in *Gonzalez Canevero*, a partition of that same District of Columbia property. Although these issues may not on their face fall entirely within the domestic relations exception, they are close enough that abstention is appropriate.

To determine if the federal abstention doctrine applies, a court should "sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981). On its face, plaintiff's complaint supports the conclusion that the issues here are domestic-related and that ruling on these issues would require the Court to analyze not only the divorce decree but, in particular, the parties' relationship surrounding the District of Columbia property from the time they acquired it together from alleged commingled funds through their marriage, separation, and divorce, and to the present. The "general inquiry" will require the Court to become involved in domestic issues such as inquiring into the marital relationship. *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981). First, the property involved in the complaint is referenced several times in the divorce decree. Since no judgment was rendered concerning this property, it is part and parcel of the couple's unsettled domestic disputes.[8] Not only is the property at issue referenced and intertwined in the divorce decree, but plaintiff alleges that the intent of the Florida court's final judgment of an alimony award still has not been satisfied since none of the awarded amount has been paid. Complaint ¶ 15. The Florida court noted that Francisco Coll contested payment and that "he will not pay Mary Coll any monies unless forced to do so by motions for contempt of court." Judgment at 5. Particularly under these circumstances, where the final intent and judgment of the Florida court has not been satisfied, this Court should not involve itself in an action that "verge[s] on the matrimonial, or impinge[s] upon the matrimonial jurisdiction of the state courts." *Kamhi v. Cohen*, 512 F.2d 1051, 1056 (2d Cir.1975).

Second, the issues of partition and an accounting for rents and profits clearly im-

---

**8.** Plaintiff's complaint refers to the Florida court's decree of divorce, in which it determined that "the Colls jointly owned, as husband and wife, property located in six states, the District of Columbia, Puerto Rico, Canada, and Australia; and Francisco Coll was receiving *'all* of the rents on the properties jointly owned' by the parties." Complaint ¶ 8 (citing Findings of Fact, Conclusions of Law and Final Judgment ("Judgment") at 2, 3) (emphasis in original). Furthermore, the Florida court ordered that Francisco Coll "use the rents currently being received on all the properties described on page 2 ..., to pay the mortgages and other expenses on said properties until the intent of this final judgment is satisfied." The District of Columbia property is one of the said properties described on page two of the court's Judgment: 1968–1977 are the years of the marriage when the parties "acquired equities in their jointly owned properties...." *Id.* at 7. The Judgment also provides that the parties "have provided the Court with sufficient evidence as to the current value of their respective assets, including the real *property* which they *jointly own* both within and without the United States," *id.* at 3, and again later refers to the properties, including the District of Columbia property, stating: "[t]he evidence established that numerous of the properties owned by Petitioner and Respondent are only used periodically, if at all, each year." *Id.* Finally, the court observed that determination of the property values was not a prerequisite to the court's determination of the alimony award. *Id.* at 4.

plicate issues related to the parties' former marital relationship.[9] Ruling on partition is not a mere mechanical operation where the parties' property is simply divided into equal halves—it can involve much more. Partition, particularly supplemented by a request for accounting of rents and profits received on that property, may well require a court to delve into the parties' former marital relationship and determine their prior shares and disposition toward the property. *See Sebold v. Sebold,* 444 F.2d 864, 872 (D.C.Cir.1971) (citing *Jezo v. Jezo,* 23 Wis.2d 399, 127 N.W.2d 246, 250 (1964)); *see also* D.C.Code § 16–910; *Broadwater v. Broadwater,* 449 A.2d 286 (D.C.App. 1982) (upholding trial court's award of 60% interest in marital home to husband and 40% to wife). Thus, this Court, to decide upon a partition of property with the accountings since *separation,* would have to inquire into domestic matters relating back to the time the marriage existed and the parties maintained the properties as tenants by the entireties and until the present.[10]

An additional reason for declining jurisdiction in this case is that, in the District of Columbia, actions involving partition and other property-related matters are considered actions of a purely local nature and are to remain under the jurisdiction of the Superior Court of the District of Columbia.[11]

In 1970, because of crowded court calendars and the tremendous backlog in the United States District Court for the District of Columbia, Congress realigned jurisdiction among the United States District Court for the District of Columbia and the Superior Court of the District of Columbia. D.C.Code §§ 11–501, 11–921.[12] Congress clearly stated that the United States District Court for the District of Columbia *"shall no longer* have jurisdiction over local court matters."[13] These types of actions were transferred to the Superior Court during certain transitional stages.[14] The Superior Court was to receive jurisdiction of matters related to partition of property. § 11–921(5)(A)(i).

The applicable legislative history of the District of Columbia court system makes clear that partition actions and other matters incidental to real property actions are considered local civil actions and are no longer within the jurisdiction of this Court. In the absence of specific congressional action to the contrary, this Court should not interfere with this congressional judgment regarding state court jurisdiction.

> Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.

*United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966). Since there are no such federal interests at stake in this case, and it is certain that these claims will "embroil the federal courts in matrimonial matters best left to the states," *Sutter v. Pitts,* 639 F.2d 842, 844 (1st Cir.1981) (quoting *Hernstadt v.*

9. Plaintiff in her complaint "demands an accounting for all rents and profits received since the date of *separation."* Complaint ¶ 14 (emphasis added).

10. Since the parties still jointly own other real estate, this action could be only the first in a series of on-going domestic-related disputes.

11. *See generally, Reorganizing the Courts of the District of Columbia, and for Other Purposes,* S.Rep. No. 405, 91st Cong., 1st Sess. (1969).

12. *See Report of the Ad Hoc Committee Assigned to Study History and Jurisdiction of District of Columbia Court System: Hearings on S. 2601 Before the Committee on the Administration of Justice,* 91st Cong., 1st Sess. 562–63 (1969); District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, §§ 11–501, 11–921, 84 Stat. 473, 476, 484–85 (1970).

13. S.Rep. No. 405, at 19.

14. *Id.* at 19, 23.

*Hernstadt,* 373 F.2d 316, 318 (2d Cir.1967)), this case should be brought in state court.[15]

In short, after analyzing the language of the complaint and divorce decree, the law of this jurisdiction, decisions of courts in similar cases, and the well-established domestic relations exception to diversity jurisdiction, and fully taking into account plaintiff's arguments, this Court believes that "[s]tripped of its verbiage, this is no more —and no less—than a domestic relations case. While it may be true ... that there are instances where estranged parties may properly sue each other in federal courts, this is not one...." *Jagiella,* 647 F.2d at 565 (quoting *Bacon v. Bacon,* 365 F.Supp. 1019, 1020 (D.Ore.1973)). Although the law is a bit murky in this area, the better judgment of this Court leads to the conclusion that the causes of action here, so closely intertwined with domestic relation issues, are more appropriately heard by the local courts.

Accordingly, for the reasons set forth above, it is hereby

ORDERED that this case is dismissed without prejudice. Plaintiff is free, of course, to refile her claims in the more appropriate forum, Superior Court of the District of Columbia.

IT IS SO ORDERED.

15. Even where a domestic dispute arises from application of federal law, courts have declined to exercise jurisdiction. *See e.g., Franz v. United States,* 712 F.2d 1428, 1429 (D.C.Cir.), *addendum to* 707 F.2d 582 (D.C.Cir.1983) ("Congress did not intend to 'federalize' domestic-relations law."); *see also id.* at 1435 (Bork, J., concurring in part and dissenting in part) ("Whatever current constitutional limits to federal power may be, it is absolutely clear that federal preemption in areas of family law must, at the very least, meet stringent standards to succeed.")