Leonard T. RALEIGH, Appellant,

v.

UNITED STATES, Appellee.

UNITED STATES, Appellant,

v.

Leonard T. RALEIGH, Appellee.

Nos. 8950, 8962.

District of Columbia Court of Appeals.

Argued Jan. 7, 1976.

Decided Feb. 11, 1976.

R. Kenneth Mundy, Washington, D.C., for appellant in No. 8950 and appellee in No. 8962.

Bernard J. Panetta, II, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, Stuart M. Gerson, and Douglas J. Behr, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee in No. 8950 and appellant in No. 8962.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

These are consolidated appeals. Appellant Raleigh challenges his conviction on two counts of keeping a bawdy or disorderly house, namely the Raleigh House, at 1502 – 13th Street, N.W., in violation of D.C.Code 1973, § 22–2722. The government appeals the trial court's refusal to enter an order abating the nuisance of the Raleigh House as required by D.C.Code 1973, § 22–2717. We affirm appellant Raleigh's convictions, reverse the trial court's finding that the Raleigh House is not a nuisance, and remand the case for the entry of an order of abatement.

The initiation of criminal proceedings against appellant Raleigh followed extensive police investigative efforts over a period of many months. Raleigh and three codefendants first were charged by an information dated June 14, 1973, with having kept a bawdy or disorderly house on or about that date.[1] Before those cases could be tried, on August 30, 1973, Raleigh and the same codefendants again were charged with operating the Raleigh House as a bawdy or disorderly house on or about August 29. The charges made in both sets of informations later were joined.

Raleigh and his codefendant Lai demanded trial by jury. On January 28,

---

1. The three codefendants were Ayodele B. Lai, Mildred Williams, and Rose H. Freeland. Williams later pleaded guilty; the charges against Freeland were dropped; and Lai was found not guilty. (The charges against Raleigh and Lai had been severed from those against Williams and Freeland.)

1974, the case was certified to one judge for trial. However, he disqualified himself, and the matter was certified to another judge. The defendants' jury demands were withdrawn, and a four-day trial began.

■ The government's proof amply supported Raleigh's ultimate convictions. Extensive evidence indicated that couples, many of which included known prostitutes, constantly streamed in and out of the Raleigh House, often staying for only 10 or 15 minutes. Their behavior, *e.g.*, the same women entering and leaving the house several times a night accompanied by different men, none of whom carried any luggage, demonstrated that their purpose was not to make legitimate use of the house as a tourist home. The government also submitted books and records seized from the Raleigh House during the execution of a search warrant. The receipts of room rentals showed that many of the rooms at the house had been rented as often as twenty times a day.[2]

Police officers testified that on several occasions in the late spring and throughout the summer of 1973, they were solicited by prostitutes on the street near the Raleigh House and directed to the house. Once inside, these officers paid the desk clerk, followed the women to the assigned rooms, and then placed them under arrest for soliciting.

In addition, the government adduced proof that during the execution of the search warrant, police officers found a man and a woman, nude from the waist down, on a bed in one of the rooms of the Raleigh House. The woman previously had been arrested for and pleaded guilty to a solicitation charge which stemmed from an incident at the Raleigh House. Further, a neighbor testified that the Raleigh House had a reputation for being "a house of prostitution."

■ In order to establish Raleigh's connection with the premises and his knowledge of its illegal use, the government introduced a copy of the Raleigh House Corporation's annual report, as filed with the Recorder of Deeds, which listed appellant as the president, treasurer, and one of the directors of the corporation.[3] It further was shown that appellant maintained an office at the Raleigh House and visited it frequently. These facts, coupled with the undisguised and recurrent use of his hotel by prostitutes and their customers, provided sufficient proof that Raleigh knew the nature of the activities conducted at the Raleigh House and that he "either procured it to be done, or permitted it to be done or did nothing to prevent it." *United States v. Laffal*, D.C.Mun.App., 83 A.2d 871, 872 (1951); *see Killeen v. United States*, D.C.App., 224 A.2d 302 (1966); *DeForest v. United States*, 11 App.D.C. 458 (1897).

2. Raleigh argues that the rental receipts were improperly admitted because the government failed to establish an adequate chain of custody. The trial court found that, due both to the nature of the articles themselves and to the manner in which they were handled, it was singularly unlikely that the evidence had been altered. That ruling was correct.

3. Appellant advances two claims of error in connection with the introduction of the corporate record. He first alleges that the record was not properly authenticated before admission. This contention has no merit. *See* D.C.Code 1973, § 29–949; Super.Ct.Civ. R. 27. Appellant also cites as an infirmity the fact that the record was dated November 21, 1972, and he asserts that it therefore

cannot serve as proof of his proprietorship since it was outdated. It is our view that the government sustained its burden in this regard. It is obvious from the face of the records that the report was the most recent on file with the Recorder of Deeds. If appellant had, in the meantime, disengaged himself from the Raleigh House Corporation, it was his burden to rebut the evidence of ownership already adduced by the government. Facts which would rebut the government's evidence would be peculiarly within appellant's knowledge. *See Morrison v. California*, 291 U.S. 82, 88–89, 54 S.Ct. 281, 78 L.Ed. 664 (1934); *cf. James v. United States*, D.C. App., 350 A.2d 748 (1976); *White v. United States*, D.C.App., 283 A.2d 21 (1971).

The foregoing constitutes but a brief summary of the government's evidence. Defense counsel advanced oral motions for judgments of acquittal at the conclusion of the government's case on January 31, 1974, and declined to present any evidence. The motions were taken under advisement. Twelve days later, the following jacket entries were made: "Motion for judgment of acquittal denied. Matter taken under advisement and the court will notify parties as to continued date."

The case remained undecided from January 31 until September 25, 1974. On that date, the parties again were before the court. Still further argument was conducted, following which the court stated:

> THE COURT: I find that there is no proof that the Raleigh House is a nuisance, per se, because as [defense counsel] pointed out, no one complained about what was going on inside there.
>
> I find there is not enough proof in the record to suggest that the Raleigh House was functioning for the purpose of prostitution.
>
> I find a strong proof by the Government that the Raleigh House functions for the purpose of making rooms available to people for sexual activity.
>
> I find from the records of the Raleigh House themselves, Mr. Raleigh is deemed to know that is what the Raleigh House is doing.

> \* \* \* \* \* \*

Against the background of those findings, it is the Government's point of view that Mr. Raleigh is guilty?

> [GOVERNMENT COUNSEL]: That is correct, Your Honor. That is the Government's point of view.
>
> THE COURT: The Court finds Mr. Raleigh guilty and Mr. Lai [the frequent desk clerk] not guilty; and Mr. Raleigh will be fined $100. [4]

In a case such as this, differing but related statutes are relevant. The first, D.C. Code 1973, § 22–2713, provides in pertinent part:

> Whoever shall . . . use, own, occupy, or release any building . . . or place used for the purpose of lewdness, assignation, or prostitution in the District of Columbia is guilty of a nuisance, and the building . . . or place, or the ground itself in or upon which such lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture . . . and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided.

■ The United States could have proceeded against the Raleigh House in an equitable action for abatement under D.C. Code 1973, § 22–2714. Instead, it proceeded against Raleigh as an individual by charging him with the criminal offense of keeping a bawdy or disorderly house in violation of § 22–2722. Immediately after the findings of guilt were made, the government invited the trial court's attention to § 22–2717 of the Code, which states:

> If the existence of the nuisance be established in an action as provided in sections 22–2713 to 22–2720, or in a criminal proceeding, an order of abatement shall be entered as a part of the judg-

---

4. The court did not request a presentence report. When the courtroom clerk asked if the ruling of guilty applied to both of the charges pending against appellant Raleigh, the court indicated that it did, and stated that the fines "are to run concurrently." The parties appear to have interpreted that as meaning there was to be a single fine of $100. Notwithstanding the court's sentencing largesse, Raleigh's counsel asked: "Can we have one week, Your Honor? Mr. Raleigh's business has been curtailed." The trial court then stayed the fine pending appeal.

ment in the case which order shall direct the removal from the building or place of all fixtures, furniture . . . or movable property used in conducting the nuisance, and shall direct the sale thereof . . . and the effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released.

The reasoning behind the legislative directive of abatement is not obscure. While a bawdy house may prove profitable to its operator, its existence scarcely enriches either the specific neighborhood in which it is located or the overall community. Nonetheless, notwithstanding the clear language of the statute, the court refused to enter an order of abatement. The court's response to the Assistant United States Attorney was direct: "Did you hear my [first] finding? I found that it was not a nuisance." The government contends before us that when a defendant has been found guilty of maintaining a bawdy or disorderly house in violation of § 22–2722, the house in question must be deemed to be a nuisance per se which the trial court is compelled to abate.[5] We agree.

 It never has been necessary to prove that a house is openly uproarious, offensive, or otherwise vexing to the community in order to. establish its status as a nuisance per se. Indeed, to require such proof would be effectively to nullify the law as it applies to operations like the Raleigh House, for, as long has been recognized, they "are generally sought to be surrounded with an air of mystery and secrecy to keep the knowledge of them from the general public". *DeForest v. United States, supra* at 463. A nuisance per se is a nuisance under the law whether or not the activity affirmatively disturbs persons exposed to it, and the government is not obliged to present a series of witnesses to testify that the house disturbs them as individuals.[6] A bawdy house is a classic example of a nuisance per se, as reflected not only by long-standing case law,[7] but also by § 22–2713 of the Code, which labels as a nuisance "any building . . . or place used for the purpose of lewdness, assignation, or prostitution in the District of Columbia."

Since a bawdy house unquestionably is a nuisance per se as a matter of law, the trial court erred in searching for a complaining citizenry and, failing to find such, in refusing to abate the nuisance. The demonstrated activity at the Raleigh House thus apparently has been allowed to continue unallayed for a lengthy period of time. We affirm the judgments of conviction of appellant Raleigh, and remand the case for the expeditious entry of an order of abatement under § 22–2717 which will effect a discontinuance of the use of the Raleigh House as a bawdy house in violation of District of Columbia law.

*Affirmance in No. 8950; reversed in No. 8962; remanded for entry of abatement order.*

---

5. Appellant argues that the government's proof did not rise to the level required by *Payne v. United States*, D.C.App., 171 A.2d 509 (1961), which set forth the relevant law in the District of Columbia at the time of Raleigh's trial. *Harris v. United States*, D.C. App., 315 A.2d 569 (1974) (en banc) had not yet been decided. *Payne* required (as *Harris* does not) that the government establish that the acts committed in the bawdy house be subversive to the public morals. However, the case upon which *Payne* relied, *DeForest v. United States, supra*, involved a "house of prostitution", and it there was rec-

ognized that such activities were, under common law, typical of the kind deemed necessarily corrosive of public morals. The evidence makes it clear that the Raleigh House was operated as a typical "disorderly house". *See Wood v. United States*, D.C.Mun.App., 183 A.2d 563, 566 (1962), *cert. denied*, 371 U.S. 963, 83 S.Ct. 543, 9 L.Ed.2d 510 (1963) ; *Collins v. United States*, D.C.Mun.App., 41 A.2d 515 (1945).

6. *See Harris v. United States, supra* note 5 at 572 n. 9 and cases cited therein.

7. *Id.* at 572–73.