UNITED STATES of America, Appellee,

v.

Charles Edward WADE, a/k/a
Buck, Appellant.

Nos. 97–3135, 97–3140, 97–3141,
97–3170 and 97–3171.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1998.

Decided Aug. 21, 1998.

Andrew P. McGuire, with whom Mitchell M. Seltzer (appointed by the court) was on the briefs for appellants Shelton Wade, et al., argued the cause for all appellants.

David B. Smith and Thomas Lumbard (both appointed by the court) were on the briefs for appellants Charles and Eugene Wade.

Thomas S. Rees, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and William B. Wiegand, Assistant United States Attorneys, were on the brief, argued the cause for appellee. John L. Brownlee, Assistant United States Attorney, entered an appearance for appellee.

Craig D. Margolis and William E. Lawler III were on the brief for amicus curiae Operation Crackdown.

Before SENTELLE and RANDOLPH, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

BUCKLEY, Senior Judge:

The defendants, who were convicted of keeping a "disorderly house" used in connection with their drug-related activities, challenge the district court's authority to enter an order of abatement against the house. Because such orders may be issued only to abate nuisances arising out of the use of premises for purposes of lewdness, assignation, or prostitution, we vacate the order.

## I. BACKGROUND

On May 28, 1997, Charles Wade and his brother Eugene Wade pleaded guilty to a three-count information alleging(1) conspiracy to distribute cocaine base and to possess the drug with intent to distribute in violation of 18 U.S.C. § 371, (2) unlawful distribution of cocaine base in violation of D.C.Code § 33–541, and (3) maintenance of a disorderly house in the District of Columbia in violation of D.C.Code § 22–2722 ("section 2722").

According to the Government, the Wades sold drugs from and in the vicinity of a residence at 647 G Street, S.E., in Washington, D.C. Although neither Charles nor Eugene lived at that address, their parents and various other family members lived there at the time and continue to do so today. On the basis of their pleas, the district court assessed fines against Charles and Eugene, sentenced them both to terms of imprisonment, and entered an order of abatement against 647 G Street. See Order of Abatement, Crim. No. 96–472(Sept. 25, 1997); see also D.C.Code § 22–2717 ("section 2717") (requiring abatement of nuisance in certain circumstances). The order of abatement commanded that the United States Marshal close the house for one year and that, during the period of abatement, the Marshal remove all fixtures and personalty "used in conducting the nuisance...." See Order of Abatement at 2–3.

Both Charles and Eugene objected to the order, and Charles moved the district court to reconsider it. Various family members who either resided at or had an interest in 647 G Street intervened seeking reconsideration of the order. The court permitted the family members to intervene but refused to reconsider its decision, holding that an order of abatement is a mandatory sanction upon conviction of keeping a disorderly house under section 2722. See Memorandum Opinion, 992 F.Supp. 6, 10–11, 13 ("Mem. Op.").

Charles and Eugene, joined by members of their family, appeal the order of abatement, which was stayed pending our resolution of this case.

## II. ANALYSIS

Federal district courts in the District of Columbia have jurisdiction over offenses "under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." D.C.Code § 11–502(3). Thus, where an indictment or information couples District of Columbia and federal charges, the district court may adjudicate the entire case. See United States v. Greene, 834 F.2d 1067, 1069 n. 2 (D.C.Cir.1987). In this instance, the Wades pleaded guilty to various offenses under both federal and D.C. law, including keeping a disorderly house in violation of section 2722 (providing criminal penalties for anyone convicted of keeping "a bawdy or disorderly house" in the District of Columbia).

On the basis of the Wades' admission that they kept a disorderly house, the district court entered an order of abatement against the property pursuant to section 2717, which specifies, in relevant part, that where "the existence of the nuisance be established ... in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case...." D.C.Code § 22–2717.

The Wades challenge the district court's order on three grounds: (1) the court lacked jurisdiction to enter the order; (2) section 2717's abatement provision does not apply to the kind of disorderly house they were convicted of keeping; and (3) the district court did not afford them due process prior to entering its order. Because we hold the statutory argument dispositive, we do not address the constitutional question. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The

Court will not pass upon a constitutional question ... if there is also present some other ground upon which the case may be disposed of."). We review the district court's order pursuant to 28 U.S.C. § 1291.

### A. District Court's Jurisdiction to Enter an Order of Abatement

■ The Wades cite D.C.Code § 11–921(a)(3) and (5) for the proposition that an order of abatement is a form of equitable relief that falls within the exclusive jurisdiction of the District of Columbia Superior Court and contend that the district court therefore lacked jurisdiction to enter it. Thus, the Wades' complaint appears to be that any connection between their conviction and the order of abatement is too attenuated to permit the district court to enter the order. That argument, however, ignores the mandatory nature of the penalty imposed by section 2717, which states that "an order of abatement *shall* be entered as part of the judgment" in any criminal proceeding that establishes the existence of the predicate nuisance. D.C.Code § 22–2717 (emphasis added). Because the order was entered "as a part of the [criminal] judgment," it was within the court's jurisdiction—assuming, of course, that section 2717 was properly invoked. *See* D.C.Code § 11–502(3) (district court has jurisdiction over any offense under any law applicable exclusively within D.C. when joined with any federal offense); *see also United States v. Jones*, 527 F.2d 817, 820–21 (D.C.Cir.1975) (permitting imposition of either D.C. or federal sentence, but not both, where defendant was convicted of conduct that violated both federal and local laws).

### B. Keeping a Disorderly House and D.C.Code § 22–2717

■ The Wades next claim that section 2717 does not apply to a disorderly house other than one used for the purpose of "lewdness, assignation, or prostitution."

#### 1. Statutory Structure

The Government implicitly relies upon the proximity of sections 2717 and 2722 in Title 22 of the D.C.Code to support its claim that conviction of keeping any disorderly house under section 2722 requires application of the remedy specified in section 2717. The two sections, however, were enacted by Congress at different times as part of different bills. Thus their juxtaposition in the D.C.Code is without relevance.

Section 2722 was originally part of the Act of July 16, 1912, in which Congress granted jurisdiction over cases concerning "the keeping of a bawdy or disorderly house" to the trial courts of the District of Columbia. *See* Act of July 16, 1912, P.L. 62–226, § 1, 37 Stat. 192 (1912). Section 1 of the Act specified that the keeping of a bawdy or disorderly house was punishable by a fine of $500, one year imprisonment, or both. *Id.* That provision has since been amended to read: "Whoever is convicted of keeping a bawdy or disorderly house in the District shall be fined not more than $1,000 or imprisoned not more than 180 days or both." *Id. as amended by* 1994 D.C. Stat. 10–151, § 107.

Section 2717, on the other hand, was passed into law as part of the Act of February 7, 1914, Ch. 16, 38 Stat. 280 (1914), which is codified at D.C.Code §§ 22–2713 through 22–2720. The introductory section of the 1914 Act provides that

> whoever shall erect, establish, continue, maintain, use, own, occupy, or re-lease any building ... used for the purpose of lewdness, assignation, or prostitution ... is guilty of a nuisance, and the building ... in or upon which such lewdness, assignation, or prostitution is conducted ... and the furniture, fixtures, musical instruments, and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided.

*Id.* (codified at D.C.Code § 22–2713) ("section 2713"). Nuisance is not otherwise defined in the statute. Section 2 of the Act authorizes the Government or any citizen to bring an equitable action to enjoin "a nuisance ... *as defined in this Act.*" *Id.* § 2 (emphasis added) (codified at D.C.Code § 22–2714). Section 5, which is codified at D.C.Code § 22–2717 and is the provision at issue here, then commands that

> [i]f the existence of *the* nuisance be established in an action as provided in [this Act, i.e., an equitable action under section 2], or in a criminal proceeding, an order of

abatement shall be entered as a part of the judgment in the case. . . .

*Id.,* § 5 (emphasis added).

*2. Discussion*

■ The Government contends that section 5 of the 1914 Act, D.C.Code § 22–2717, requires entrance of an order of abatement upon conviction of any crime whose prosecution entails proof that the defendant engaged in conduct constituting a common law nuisance *per se.* The Wades, on the other hand, claim that the 1914 Act is exclusively concerned with the kind of nuisance described in section 2713, namely the use of a building for purposes of lewdness, assignation, or prostitution; as a consequence, the abatement orders authorized by section 2717 may apply only to buildings that have been used for such purposes. We review this legal question *de novo. United States v. Abdul–Saboor,* 85 F.3d 664, 667 (D.C.Cir.1996).

The Government notes that the Wades, who have pleaded guilty of maintaining a disorderly house, were engaged in illegal drug dealing on a regular basis at 647 G Street. It then refers us to a host of hoary cases showing that a disorderly house is a nuisance *per se* and that the term "disorderly house" applies to any house, including but not limited to houses of prostitution, in which activities occur that disrupt the general public peace, health, or morals. The Government asserts that the repeated selling of illicit substances in the vicinity of 647 G Street satisfies the common law definition of keeping a disorderly house and that because the building is a nuisance *per se,* the issuance of the section 2717 abatement order was proper.

Regardless whether the Government's description of these cases is accurate, they are irrelevant. This case is governed by statute, not by the common law. *Cf. Day v. United States,* 682 A.2d 1125, 1129 (D.C.1996) (noting that "D.C. statutory law and D.C. case law agree that a relevant statute supersedes the common law"). The 1914 Act is plain: section 2717 concerns only those nuisances defined in section 2713. Section 2713 specifies that one who uses a building for "the purpose of lewdness, assignation, or prostitution . . . is guilty of a nuisance," D.C.Code § 22–2713; and section 2717 specifies that an order of abatement shall be entered upon proof of "*the* nuisance." (The district court incorrectly read this passage to require that it enter an order of abatement upon proof of "*a* nuisance." *See* Mem. Op. at 16 (emphasis added).) Thus, the nuisance to which section 5 of the 1914 Act refers is one of the nuisances described at the opening of the Act, now codified at section 2713. Indeed, neither the Government's nor our own review of case law discloses a single instance where the predicate for invoking the section 2717 abatement remedy involved a conviction for keeping a disorderly house other than one "used for the purpose of lewdness, assignation, or prostitution." Furthermore, as the Government's silence on this question implicitly concedes, the Wade brothers have not been convicted of a crime involving lewdness, assignation, or prostitution; nor is there any evidence that 647 G Street was ever used for such purposes.

Section 2722 criminalizes keeping a "bawdy or disorderly house[ ]." While conviction for keeping a bawdy house, which is commonly defined as a "house of prostitution[ ] . . . [or as a] house . . . maintained for the convenience and resort of persons desiring unlawful sexual connection," *Black's Law Dictionary* 153 (6th ed.1990), would clearly entail the type of nuisance described in section 2713, the keeping of a disorderly house might or might not, depending on the nature of the activity conducted in it. *See Harris v. United States,* 315 A.2d 569, 573 (D.C.1974) (holding that in prosecution for maintenance of disorderly house under section 2722, Government "must prove that the activities on the premises either disturb the public or [as in the case of a bawdy house] constitute a nuisance *per se.*") (footnote omitted). Because the Government failed to show that 647 G Street was "used for the purpose of lewdness, assignation, or prostitution," the Wades' plea of guilty to keeping a disorderly house is insufficient to permit the application of section 2717.

The structure of the 1912 and 1914 Acts confirms our reading of sections 2713 and 2722. Whereas the remedies for maintaining a nuisance under section 2713 are laid out in subsequent statutory provisions, *see*

D.C.Code §§ 22–2714 (injunctions) & 22–2717 (abatement), section 2722 includes its own penalty provisions and is therefore self-enforcing. Thus, conviction under section 2722's prohibition on the keeping of a house found to be disorderly for reasons unrelated to the exploitation of sex will subject the defendant to fines and imprisonment but not to a section 2717 abatement order.

The Government nevertheless cites *dicta* in the D.C. Court of Appeals' decision in *Raleigh v. United States*, 351 A.2d 510, 514 (D.C.1976), as "unassailable authority" for the proposition that an abatement order must issue upon any conviction for keeping a disorderly house. The Government over-states its case. In *Raleigh*, the prosecutor proved that the defendant ran a house of prostitution. The trial court nevertheless declined to hold that the property was a nuisance subject to abatement under section 2717. *See id.* at 513–14. In reversing the trial court, the Court of Appeals stated:

> The government contends before us that when a defendant has been found guilty of maintaining a bawdy or disorderly house in violation of § 22–2722, the house in question must be deemed to be a nuisance per se which the trial court is compelled to abate. We agree.

*Id.* at 514 (footnote omitted). In the accompanying footnote, the court characterized the house of prostitution "as a typical 'disorderly house,'" *id.* at 514 n. 5, which, of course, it was. As we have pointed out, however, that a bawdy house is a disorderly house does not imply that the reverse is necessarily true. Because there is no doubt that the property in *Raleigh* was used for "lewdness, assignation, or prostitution," D.C.Code § 22–2713, there is no question that it fell within the ambit of sections 2713 and 2717.

The *Raleigh* court did not have before it the question whether a disorderly house not used for such purposes is the kind of nuisance referred to in section 2717. Nevertheless, even if its discussion of disorderly houses purported to decide that section 2717 applies to a disorderly house of any kind, we would still not be bound by it. Because that issue was not before the court, its overly broad language would be *obiter dicta* and not entitled to deference. *See Kendall v. Pladson (In re Pladson)*, 35 F.3d 462, 466 (9th Cir.1994) ("We give no effect to the California court's criticism of *Cole* [a bankruptcy appellate panel decision] because it was pure dicta.... Federal courts are not bound by dicta of state appellate courts."); *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir.1980) ("a federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta"); *Walker v. Felmont Oil Corp.*, 240 F.2d 912, 916–17 (6th Cir. 1957) (holding that dictum of state's highest court is not binding and that its precedential value should be premised upon the respect it enjoys). Although we respect the Court of Appeals' "considered *dict[a]*" when predicting how the D.C. courts will address a novel question of law, *see Gasch v. Britton*, 202 F.2d 356, 359 (D.C.Cir.1953), we will not defer to what appears to be no more than an unintentional blurring of the important distinction between houses that are used for sexual purposes and those that are not. *Cf. Kendall*, 35 F.3d at 466. Accordingly, we conclude that, if confronted with this question, the D.C. Court of Appeals would hold that conviction for keeping a disorderly house under section 2722 will require an abatement order pursuant to section 2717 only if that house was used, at least in part, for the purposes described in section 2713.

### III. CONCLUSION

Because the district court lacked statutory authority to enter its order of abatement, we vacate the order.

*So ordered.*