**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles WADE, et. al., Defendants.**

**No. Crim.96–472 RCL.**

United States District Court,
District of Columbia.

March 24, 2000.

Joanne Maria Vasco, Hyattsville, MD, Thomas Abbenante, Washington, DC, David B. Smith, English & Smith, Alexandria, VA, Mona Asiner, James W. Rudasill, Jr., Jensen Egerton Barber, Law Offices of J.E. Barber, Mitchell Mark Seltzer, Washington, DC, Robert Ernest Sanders, Punta Gorda, FL, Michael Alan Olshonsky, Joseph Virgilio, Washington, DC, for defendants.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

Pending are third-party intervenors Sheila Gant's, and Shelton, Angel, Jean, and Dorothy Wade's Petition for Payment of Attorney's Fees and Expenses pursuant to 28 U.S.C. § 2412(d) of the Equal Access to Justice Act ("EAJA") and the Hyde Amendment, Pub.L. No. 105–119, 111 Stat. 2440, 2519 (1997), to which the Government has filed its Response in Opposition. Having carefully considered the parties' written arguments, the supporting documentation before the Court, and the record herein, the Court will deny petitioners' request for attorney's fees and expenses.

## I. Background

Beginning in 1994, the Washington Metropolitan Police Department received numerous complaints of drug trafficking in front of the rowhouse at 647 G Street, S.E., Washington D.C. *See United States v. Wade*, 992 F.Supp. 6, 8 (D.D.C.1997). In response to these complaints, the Metropolitan Police initiated an investigation of the residence in October 1994. *Id.* The investigation documented the use of 647 G Street as a storage site for drugs and a locus for drug trafficking. *Id.* Undercover police purchased drugs, in front of 647 G Street, on multiple occasions from seven different individuals, including Charles and Love Wade. *Id.* In addition, drugs were recovered at the house during two police searches in 1995 and 1996. *Id.*

On December 19, 1996, Charles Wage, Eugene Wade, and their father, James Wade, among others, were charged with narcotics conspiracy and related offenses, including keeping a disorderly house in violation of D.C.Code § 22–2722. *Id.* at 9. On May 28, 1997, Charles Wade and his brother Eugene Wade pleaded guilty to conspiracy to distribute and to possess with intent to distribute cocaine base, in violation of 18 U.S.C. § 371; unlawful distribution of cocaine base, in violation of D.C.Code § 33–541; and maintenance of a disorderly house in the District of Columbia, in violation of D.C.Code § 22–2722. In their September 25, 1997 sentencing, the Court entered an order of abatement against 647 G Street, S.E., pursuant D.C.Code § 22–2717. On January 23, 1998, petitioners filed a motion for reconsideration, which the Court subsequently denied. On appeal, the order of abatement was vacated. *See United States v.*

*Wade,* 152 F.3d 969 (D.C.Cir.1998). Petitioners, intervening family members with possible equitable interests in the premises, then filed the pending application for attorney's fees and expenses pursuant to the Equal Access to Justice Act and the Hyde Amendment. They seek an award of $18,316.17.

## II. Discussion

*1. Claim for Attorney's Fees and Expenses Under the Equal Access to Justice Act*

Under sovereign immunity, the Government is free from attorney's fees liability "except to the extent it has waived its immunity." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938, (1983). The Equal Access to Justice Act ("EAJA") is one such waiver. The EAJA provides, in relevant part, that:

a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The plain language of the statute clearly limits this waiver of sovereign immunity to "civil cases other than cases sounding in tort". *Id.* Nevertheless, petitioners argue that this waiver should be extended to criminal cases.

The Court "must 'construe waivers of immunity strictly in favor of the sovereign'". *Sierra Club,* 463 U.S. at 685, 103 S.Ct. 3274, (quoting *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951)). Therefore, the Court may not create a waiver where one is not "unequivocally expressed" by Congressional intent. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, (1980). Petitioners, however, wish the

Court to construe a waiver for their third-party intervention in a criminal sentencing proceeding, arguing that as an "in rem proceeding", the abatement is not a criminal action. Pet. Motion at 4.

As the Court of Appeals for this Circuit has yet to decide this issue, petitioners cite cases that involve the awarding of attorney's fees, under the EAJA, to third-party intervenors in criminal forfeitures. These cases, however, are neither authoritative nor on point. Beyond the difference in permanence between forfeiture and abatement, these cases involve action under the narrow statutory auspices of 21 U.S.C. § 853(n), which, according to its legislative history, was considered an "essentially civil" ancillary proceeding. *United States v. Douglas,* 55 F.3d 584, 586 n. 9 (11th Cir.1995).

Furthermore, this Circuit has held that the EAJA "does not parse 'cases' into tort and non-tort issues but instead provides a blanket exception for cases that sound in tort." *In re Turner,* 14 F.3d 637, 640 (D.C.Cir.1994). Accordingly, as the statute's plain language excludes criminal cases, the Court will not parse criminal cases into criminal and "civil-like" proceedings.

Petitioners, as third-party intervenors in a criminal matter, cannot claim attorney's fees under the EAJA, which strictly limits reimbursement to prevailing parties in civil actions. Moreover, the EAJA only grants awards where the government is guilty of bringing forth unjustified litigation. As the Court will show in its analysis of petitioner's claim under the Hyde Amendment, the Government was substantially justified in their position, even if the EAJA were applicable.

*2. Claim for Attorney's Fees and Expenses under the Hyde Amendment*

In the alternative, petitioners raise their argument under the Hyde Amendment. The Hyde Amendment was enacted precisely to address cases which fall beyond

the reach of the EAJA, namely criminal cases. As Representative Hyde stated, in discussing the EAJA and the Hyde Amendment, "now it occurred to me, if that is good for a civil suit, why not for a criminal suit?" 143 Cong.Rec. H7786–04, H7791.

The Hyde Amendment provides in pertinent part:

> During fiscal year 1998, and in any fiscal year thereafter, the court, in any criminal case ... may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

Pub.L. No. 105–119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).

### A. Petitioners are not Prevailing Parties within the Language and Meaning of the Statute

A threshold consideration in the application of the Hyde Amendment is whether petitioners qualify as a "prevailing party" under the statute. The Amendment specifically states its application to criminal cases and prevailing parties in such cases. "The key language requires *a successful criminal defendant* to establish that the position the government took in the prosecution was 'vexatious, frivolous, or in bad faith'." *United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir.1999) (emphasis added). The statute was enacted for cases where, as Representative Hyde stated, "Uncles Sam sues you, charges you with a criminal violation, even gets an indictment and proceeds, but they are wrong. They are not just wrong, they are willfully wrong, they are frivolously wrong." 143 Cong.Rec. H7786–04, H7791 (Sept. 24, 1997).

■ Petitioners are not parties, as such, to the instant criminal case, much less prevailing parties to the case. The peti-

tioners prevailed only within the context of their challenge to the abatement order. The actual parties to the instant criminal case have not prevailed and were validly charged and pleaded guilty to the criminal activity. Therefore, the Court finds that the intent and language of the statute targets prevailing criminal defendants, not third-party claimants such as the petitioners.

### B. The Government's Position was not Vexatious, Frivolous, or in Bad Faith

Even if petitioners were found to be prevailing parties within the context of the statute, they still must demonstrate that the Government acted in bad faith or presented a vexatious or frivolous argument to be awarded attorney's fees and expenses. The Hyde Amendment reimburses for attorney's fees and expenses "pursuant to [EAJA's] procedures and limitations (but not [its] burden of proof)." 18 U.S.C. § 3006A. As the EAJA requires the Government to bear the burden of proof, the Hyde Amendment, alternatively, shifts that burden to the petitioner. *See Kuhns v. Board of Governors*, 930 F.2d 39, 43 (D.C.Cir.1991).

■ A "vexatious" position is one "without reasonable or probable cause or excuse". Black's Law Dictionary at 1559 (7th ed.1999). The records of the Metropolitan Police Investigation demonstrate that the residence at 647 G Street, S.E. was a hub of criminal drug trafficking. These records provided sufficient evidence for valid search warrants to be issued on at least two occasions. Moreover, a grand jury indicted the Wade defendants, finding probable cause for the Government's charges of drug trafficking and related offenses. This evidence does not support petitioners' claim that the Government's position in the instant case lacked "probable cause or excuse".

Petitioners also argue that the Government was vexatious in opposing the

Wades' Emergency Motion for a Stay Pending Appeal against the Court's abatement order. The Government had charged the Wades with violating D.C.Code § 22–2722 for maintaining a disorderly house and included the abatement portion of the criminal sentence as part of Charles and Eugene Wade's plea agreements. An opposition to the Wades' motion to stay the abatement order was consistent with and substantiated by the Government's evidence and position throughout the litigation against the Wade defendants. As such, the Court does not hold the Government's position regarding the Emergency Motion to be vexatious within the meaning of the Hyde Amendment or the general meaning of the term.

Petitioners also assert that the Government withheld exculpatory evidence in the form of testimony by AUSA Ramsey Johnson. Petitioners claim that AUSA Johnson's testimony, before the D.C. Council on March 26, 1997, urged for an amendment to § 2712 because it "does not apply to 'drug-related' nuisances" and thus revealed that the Government was aware that their position was unfounded. Pet. Motion at 10. The Court has reviewed the entirety of AUSA Johnson's testimony beyond the excerpt petitioners cite in their application for fees. Pet. Motion at 7. Far from providing evidence to support petitioners' claims against the abatement order and the Government's position in the instant criminal case, AUSA Johnson's testimony *affirms* the Government's position. He states, "Our proposal also would declare that a crackhouse is a disorderly house for criminal purposes. We believe the law already supports this." Testimony of Principal Assistant U.S. Attorney J. Ramsey Johnson to Committee on the Judiciary, City Council of the District of Columbia (March 26, 1997). As such, AUSA Johnson's testimony is hardly "exculpatory evidence", nor does it render the Government's position vexatious as petitioners claim. Pet. Motion at 7.

Lastly, petitioners claim that the Government's position, allegedly put forth in "bad faith", renders them deserving of fees and costs under the Hyde Amendment. Petitioners base their claim of bad faith on the Government's goal of using the instant case as a "test case" while they allegedly were negotiating with petitioners for a settlement. Pet. Motion at 11. The Court rejects this argument because it is without appropriate documentation to determine the significance of this claim. "Unsupported assertions in a brief cannot substitute for evidence in the record." *ACLU v. Barnes*, 168 F.3d 423, 436 (11th Cir.1999). Moreover, such "evidence" can hardly meet the stringent burden of "bad faith" on the part of the Government.

Petitioners also claim that the Government's position was not substantially justified and thus was argued in bad faith. As stated supra, citizen complaints prompted an undercover investigation of 647 G Street which provided the evidence for the Government's case. To directly address the source of the citizen complaints, the Government made the appropriate charge of maintenance of a disorderly house against the defendants and argued for an abatement. Far from being a position of bad faith, the Government, as advocates of the public, took a legal position in their good faith efforts to rid the community of the drug trafficking at 647 G Street.

The Government's position argued the finding of a disorderly house under § 22–2722 to issue an order of abatement under § 22–2717. Although, the Court of Appeals interpreted the Government's argument as proposing a novel construction of these local statutes, the Government's position presented a reasonable, good faith position. In fact, this Court found two cases that provided authority for the Government's case that § 22–2722 and § 22–2717 support an abatement against a crackhouse found to be a disorderly house. *See Raleigh v. United States*, 351 A.2d 510, 514 (D.C.1976); *Harris v. United States*, 315 A.2d 569 (D.C.1974). Unfortunately, how-

ever, the Court of Appeals made no mention of this Court's interpretation of these cases but only addressed them in the context of the Government's rationale.

Furthermore, the Hyde Amendment is not intended to "chill the ardor of prosecutors" in rejecting arguments such as the Government's statutory position in the instant case. *Gilbert*, 198 F.3d at 1303 (holding that under the Hyde Amendment "allowing fees and costs against the Department of Justice when a conviction is reversed on a legal issue of first impression in the circuit would chill the ardor of prosecutors and prevent them from prosecuting with earnestness and vigor.") The Court finds that petitioners have not met their burden to prove that the Government acted in bad faith to warrant an award for fees and costs.

### III. Conclusion

For the reasons set forth above, the Court finds that the petitioners are not entitled to recover attorney's fees and expenses under the EAJA or the Hyde Amendment. The EAJA is inapplicable to criminal cases as the instant case, nor have petitioners shown that the United States' position was not substantially justified even if the EAJA were applicable. The Court further concludes that Petitioners have failed to raise a claim of vexatious and frivolous arguments or bad faith on the part of the United States to support an award of attorney's fees and expenses under the Hyde Amendment. An order denying petitioners' application for attorney's fees and costs will accompany this Memorandum Opinion.